IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARSHA K. HUTSON                                                              PLAINTIFF

V.                                         NO. 14-3113

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Marsha K. Hutson, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current application for DIB on April 24, 2012, alleging an inability to work since April 26, 2010, due to heart problems, diabetes, sciatica, and carpal tunnel syndrome. (Tr. 147-151, 164, 176). An administrative hearing was held on August 13, 2013, at which Plaintiff appeared with counsel and she and her friend testified. (Tr. 40-92).

By written decision dated September 25, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – coronary artery disease status post myocardial infarction and multiple stents, degenerative disc disease of the cervical and thoracic spine, diabetes mellitus, right rotator cuff tear and obesity. (Tr. 11). However, after reviewing all of the evidence presented, the ALJ determined

that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can only occasionally climb ramps and stairs and can never climb ladders, ropes or scaffolds. She can only occasionally balance, stoop, kneel, crouch and crawl. She cannot do any overhead work or overhead reaching.

(Tr. 14). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform her past relevant work as a credit reporter. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 30, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply

because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the

Plaintiff's age, education, and work experience in light of her RFC.  See <u>McCoy v. Schneider</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920, <u>abrogated on other grounds by Higgins v. Apfel</u>, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520; §416.920.

**III.   Discussion:**

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in determining Plaintiff's spine disorder did not meet or medically equal Listing 1.04(A); and 2) Whether the ALJ erred in his RFC determination. (Doc. 9).

**A.   Whether Plaintiff's Impairment Meets a Listing:**

Plaintiff argues that the ALJ gave a "perfunctory assessment at step three" as no actual listings were specifically mentioned. She argues that her impairment or combination of impairments met or were medically equivalent to Listing 1.04(A).

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." <u>Id</u>.  "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" <u>Carlson v. Astrue</u>, 604 F.3d 589, 594 (8th Cir. 2010)(quoting from <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990)).  "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." <u>Carlson</u>, 604 F.3d at 595.  The listings delineate impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §404.1525(a).

Listing 1.04(A) provides:

4

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);…

Appendix I, Subpart P, Regulation No. 4.

Plaintiff argues that degenerative disc disease of Plaintiff's cervical spine is well documented, and that Dr. Brownfield made a clear diagnosis of osteoarthritis to both the lumbar and cervical spine. Plaintiff further argues that the MRI studies also suggested a possible herniated disc.

Although the ALJ did not discuss Listing 1.04(A), the ALJ does not err by failing to specifically discuss a particular listing, especially when, as here, the evidence does not support the fact that Plaintiff's impairments met or medically equaled all of the listed criteria for Listing 1.04(A). There is no evidence to support the fact that Plaintiff met or equaled the requirements to establish Listing 1.04(A). The ALJ included degenerative disc disease of the cervical and thoracic spine in his list of severe impairments. (Tr. 11). However, the fact that Plaintiff had a diagnosis of a condition, complained of pain, and had had some signs of weakness and limited range of motion does not prove that she met a listing.

Prior to the relevant time period, on November 27, 2009, x-rays of Plaintiff lateral cervical spine revealed degenerative changes, without obvious acute fracture, and there was no paravertebral soft-tissue swelling. (Tr. 321-322). Another MRI of

5

Plaintiff's cervical spine performed on January 26, 2010, was reported as a very limited study, but appeared to show that there was disk disease at the C5-6 level with disk protruding or possibly even a herniated disk, although it could not be seen well enough on the axial images to tell. (emphasis added). It was reported that it did efface the CFS anterior to the cord but was not causing severe central canal or neuroforaminal stenosis at this level. (Tr. 273). On February 26, 2010, Dr. Thomas Briggs opined that Plaintiff suffered from severe obesity, probable arthritic neck pain, her arm and shoulder symptoms appeared orthopedic and not neurologic in character, and strongly recommended weight loss. (Tr. 283). X-rays of Plaintiff's chest, taken on August 30, 2011, revealed degenerative changes of the thoracic spine. (Tr. 391).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds Plaintiff has failed to meet her burden to prove her impairment met or medically equaled Listing 1.04(A).

### B. Credibility:

With respect to the ALJ's credibility analysis, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has

6

observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). The Court finds there is substantial evidence to support the ALJ's credibility analysis.

### B. RFC Determination:

Plaintiff argues that Plaintiff is "morbidly obese" with radiating back pain, intermittent chest pain, chronic right shoulder pain, and diabetic neuropathy, and will experience pain to a degree significant enough that it will cause routine disruption to her ability to sustain concentration and attention and complete tasks in a timely manner. Plaintiff also argues that the fact that none of Plaintiff's treating physicians gave any opinion on Plaintiff's ability to work is because they were not asked to give such an opinion.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's

7

opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

In his decision, the ALJ addressed the medical records contained in the transcript, including those that pre-date the relevant time period. He discussed Plaintiff's coronary artery disease with acute myocardial infarctions and stenting of her right coronary artery, and the fact that she underwent a cardiac cauterization. (Tr. 15). The ALJ discussed Plaintiff's treatment with Dr. Lance Lincoln, and the injury she sustained to her shoulder when she fell on November 27, 2009. (Tr. 15). The ALJ also noted that Dr. Lincoln reported that Plaintiff was non-compliant with her diabetes mellitus regimen and that her long-term prognosis was not good if she did not make changes that she was aware of. (Tr. 15). He noted that an x-ray on August 30, 2011, showed degenerative changes of the thoracic spine. (Tr. 15).

The ALJ also discussed Plaintiff's treatment by Dr. Thomas Knox in January of 2010, for evaluation of right shoulder pain, and discussed the results of Plaintiff's limited cervical spine MRI scan dated January 26, 2010. (Tr. 15). The ALJ discussed Plaintiff's examination by Dr. Thomas Briggs for her neck and arm pain, and noted that Dr. Briggs reported that Plaintiff said she needed some help but managed most of her personal care; that she could walk as far as she wished; could sit in any chair for as long as she liked; could stand as long as she wanted, but it gave her extra pain; that pain restricted her social life and prevented any sexual activity; and that she had pain that was bad, but managed journeys over two hours. (Tr. 281). Dr. Briggs further noted that Plaintiff was able to actively forward flex the shoulder to 80 degrees, and holds abduction at 90 degrees, and that motor exam of her upper extremities was normal. (Tr. 281). She was found to have no limitations in the range of

8

motion of her head and neck, had normal strength and tone in her head and neck; the range of motion in her spine, ribs, and pelvis was normal; and her muscle strength and tone were normal in her spine, ribs, and pelvis. (Tr. 281-282). The ALJ further discussed testing that was done relating to her cardiac condition in 2011, her torn rotator cuff, diabetes and cardiomyopathy, hips and her pain. (Tr. 16). The ALJ discussed the fact that the medical records revealed that the medications Plaintiff had been prescribed were relatively effective in controlling Plaintiff's symptoms. (Tr. 18).

The ALJ noted that Plaintiff's treating physicians did not give any opinion on Plaintiff's ability to work. (Tr. 18). Plaintiff argues that this is improper reasoning, because the treating physicians were not asked for such opinions. Plaintiff asserts that the ALJ should have submitted interrogatories to the treating physicians and ask for their opinions. However, the ALJ in this case did not base his RFC assessment solely on the absence of limitations imposed by the treating physicians. Instead, the ALJ gave numerous other reasons for his RFC, including the objective medical evidence, Plaintiff's daily activities, medication effectiveness, and opinions of non-examining and examining physicians' opinions. The ALJ found that the opinion of examining physician, Dr. Shannon Brownfield, who found that Plaintiff had severe limitation with exertion and moderate limitations in the use of her neck, shoulder and back, was supported by the objective medical evidence of record. (Tr. 19). The ALJ gave little weight to the opinion of non-examining physician, Dr. Jerry Thomas, who found that Plaintiff could perform light work. (Tr. 19, 425-431). The ALJ gave great weight to the opinion of non-examining physician, Dr. Karmen Hopkins, who found that the medical evidence supported a sedentary RFC with postural restrictions and no overhead reaching. (Tr. 19-20, 406).

The Court finds, based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, that there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the various physicians' opinions.

### C. **Hypothetical Question**:

Although the Court believes there is substantial evidence to support the ALJ's decision relating to the above issues, the Court nevertheless finds that this matter should be remanded to the ALJ, because the Court believes there is an apparent conflict between the DOT and the VE testimony. In his RFC, the ALJ limited Plaintiff to no overhead work or overhead reaching. (Tr.14). The job of credit reporter, which the ALJ found Plaintiff would be able to perform, requires frequent reaching. Dictionary of Occupational Titles (DOT) §241.267-030. Consequently, there is a conflict between the DOT and the VE's testimony. See Moore v. Colvin, 769 F.3d 987, 989 (8th Cir. 2014)(stating the ALJ failed to resolve an apparent conflict when a hypothetical limited a person to only occasional overhead reaching, and the VE identified jobs which the DOT said required frequent reaching).

When an apparent conflict between the DOT and VE testimony exists, an ALJ has an affirmative responsibility to address the conflict. Young v. Apfel, 221 F.3d 1065, 1070 (8th Cir. 2000). If evidence from the VE appears to conflict with the DOT, the ALJ must obtain "an explanation for any such conflict." Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007). An ALJ is not absolved of a duty to investigate any conflict simply because a VE responded "yes" when asked if his testimony was consistent with the DOT. Kemp v. Colvin, 743 F.3d 630, 632-633 (8th Cir. 2014). In this case, the ALJ did ask the VE if he felt that his testimony was consistent with the information found in the DOT. (Tr.89). It is not clear whether the VE recognized the possible conflict between the hypothetical and the positions he identified,

10

and no explanation for the conflict was offered at the hearing. Although in his decision, the ALJ stated that he determined the VE's testimony was consistent with the information contained in the DOT (Tr. 21), there is no indication that he was aware of the conflict or how he made such a determination.  The Court therefore believes this failure to resolve the conflict is reversible error. See e.g., Daniels v. Colvin, 2015 WL 224668 (W.D. Ark., Jan. 15, 2015).  Based upon the foregoing, the Court concludes the ALJ did not resolve a conflict between the VE's testimony and the DOT and therefore, the VE's testimony did not constitute substantial evidence. On remand, the ALJ is instructed to identify and obtain a reasonable explanation for any conflict between the VE's testimony and the DOT.[1]

**IV.  Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds the ALJ's decision regarding Plaintiff's ability to perform the job he identified is not supported by substantial evidence, and therefore, the matter should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 23rd day of February, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

---

[1] In Kemp v. Colvin, 743 F.3d 630, 633 n.3 (8th Cir. 2014), the Eighth Circuit noted that the necessary resolution of the identified issue may be accomplished by written interrogatories posed to the VE, and thus another Administrative hearing may not be required.